UNITED STATES of America,
Appellee,

v.

Mary L. CURRIER, Defendant-Appellant.

No. 71–1274.

United States Court of Appeals,
First Circuit.

Heard Dec. 7, 1971.

Decided Jan. 27, 1972.

Joseph G. Miller, Warwick, R. I., with whom Leo Patrick McGowan, Providence, R. I., was on brief, for appellant.

Joseph C. Johnston, Jr., Asst. U. S. Atty., with whom Lincoln C. Almond, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from a conviction for embezzling funds from a federally insured bank in violation of 18 U.S.C. § 656 (1970). The defendant, a teller in the East Providence branch of the Rhode Island Hospital Trust National Bank, was charged in a three count indictment with taking $7,198.46 by a method known as "lapping."

An understanding of this appeal requires a description of the bank's accounting system. Each teller compiled a daily settlement sheet on which were listed a summary of her transactions. Cash at the beginning of the day was listed as a credit, and cash and checks at the end of the day as debits. Thus, if a teller began the day with $10,000 and if her only transaction was the cashing of a $2,000 check, her settlement sheet would show debits of $10,000 ($2,000 check, plus $8,000 cash), balancing $10,000 of credits, and she would "settle." Deposits were listed as credits, so if her only transaction was a $5,000 deposit, her settlement sheet would indicate debits of $15,000 ($5,000 check, plus $10,000 cash), balanced by credits of $15,000 ($5,000 deposit, plus $10,000 cash). The defendant was convicted of processing and debiting checks without crediting the corresponding deposits (i.e., lapping) on three separate occasions. Theoretically this should have made her "over," i.e., the debits should have exceeded the credits on her settlement sheet by the amount of the uncredited deposits. It was the government's theo-

ry that since the defendant settled when she should have been over, that she must have removed an amount of cash (debits) equal to the sum of the checks she debited without their corresponding credit.

The defendant was a special services teller and as such was required to handle and to account for all federal deposits[1] received by the bank. The evidence showed that on May 29, 1968, two federal deposits totalling $5,423.23 were not credited but that the accompanying checks were processed and debited (Count I). On the 18th of July the omitted deposits of May 29 were finally credited, but on the same day other federal deposits totalling $6,110.00 were not credited while their corresponding checks were debited (Count II). Finally, on August 19 the omitted deposits of July 18 were credited but other federal deposits totalling $7,198.46 were withheld although the corresponding checks were processed and debited (Count III). On May 29, July 18, and August 19 the defendant's settlement sheets balanced

when they should have been over by the amount of the uncredited deposits.

The evidence against the defendant was largely circumstantial.[2] Her defense was that she did not have sole access or exclusive control of the items which made up the government's case and that, therefore, someone else could have embezzled the funds.[3] However, the defendant's theory of a hypothetical embezzler,[4] is based on the premise that another teller could have withheld federal deposits *without her knowledge*. This premise is contradicted by evidence that the defendant knew of the first withheld deposits on May 29, the date they were withheld. In that section of the defendant's May 29 settlement sheet where credits for federal deposits should have been recorded, there was an erasure of words and sums identical to what would have been there if the deposits had not been withheld. Despite the erasure, the writing was visible to the naked eye and clear in the government's infrared photograph. The erased handwriting strongly resembled defendant's writing of the

1. Money withheld by an employer from the employees' pay checks for federal taxes and social security must be periodically turned over to the United States Government by making a "federal deposit" at a local bank. Although these deposits required the teller to do some additional bookkeeping, i. e., make out an internal bank memorandum called a branch ticket, they were treated in a manner essentially identical to ordinary deposits. The teller included the checks among her debits and the deposits among her credits.

2. It consisted principally of the following: (1) the checks which were processed without their accompanying deposits all had been stamped with her personal teller's stamp; (2) she was primarily responsible for handling federal deposits; (3) the federal deposit slips were stamped with the stamp over which she had primary control; and (4) there was an erasure on her statement sheet which indicated that she was aware of the existence of the first withheld deposits on the day they were withheld. There was no direct evidence of defendant's taking money or of an increase in her net worth.

3. The defendant's evidence showed that there was a lack of internal controls within the bank and that other tellers had access to her checks, her personal stamp, her cash reserves, her department check sheets (the daily tally of checks received), and her settlement sheets. Testimony that other tellers accepted federal deposits and later handed them over to the defendant was uncontradicted.

4. The defendant's evidence indicated that it was possible for another teller to accept a federal deposit and rather than handing it over to the defendant, this hypothetical teller could stamp the checks with the defendant's personal stamp and place them in the defendant's receptacle without her knowledge. Once the incriminating checks had been placed in the defendant's pile, the hypothetical teller would have to reduce the defendant's debits by an amount equal to the total of the inserted checks so that the defendant would settle. This could be done by taking either cash or checks or both from the defendant.

same words and figures on her settlement sheet of July 18.[5] Although the government expert could not testify with certainty that the erased words were written by the defendant, there was sufficient evidence for the jury to believe that they were. *See* Strauss v. United States, 311 F.2d 926, 932 (5th Cir.), cert. denied, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963); 28 U.S.C. § 1731 (1970); *see also* 7 Wigmore, Evidence § 2016 (3d ed. 1940). If the jury believed that this was her handwriting, it could reasonably conclude that she embezzled the funds in Count I. Since the three counts were interrelated, the jury could convict on Counts II and III as well.

The defendant's heavy reliance on State v. Randecker, 1 Wash.App. 834, 464 P.2d 447 (1970) is misplaced. The implicating erasure in the instant case is far stronger evidence of guilt than existed in *Randecker*. Furthermore, the *Randecker* result is based on the proposition that circumstantial evidence must exclude every reasonable hypothesis of innocence. We rejected this proposition in Dirring v. United States, 328 F.2d 512, 515 (1st Cir.), cert. denied, 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052 (1964).[6]

██ ██ Defendant contends that eleven separate exhibits were admitted into evidence without sufficient foundation. The challenged exhibits may be considered in four groups: (1) defendant's original settlement sheet for May 29, 1968 (exhibit no. 15); (2) Rhode Island Hospital Trust branch settlement sheets for May 29, July 18, and August 19 (exhibit nos. 21, 22, and 23); (3) reproduced copies of defendant's department check sheets for May 29, July 18, and August 19 (exhibit nos. 34, 32, and 30, respectively) and xerox copies of defendant's settlement sheets for July 18 and August 19 (exhibit nos. 33 and 31, respectively);[7] and (4) an enlarged in-

---

5. The two items erased from the May 29 settlement sheet were:

    "Providence Steamboat        $3,085.58
    "Wannamoisett Country Club    2,337.65."

These two items appear on the settlement sheet of July 18, thus providing an excellent basis on which to compare handwriting. Moreover, the defendant admitted that the writing appeared to be hers. She said she didn't remember and doubted that she had written it, but she refused to deny that it was hers.

6. This proposition, frequently called the circumstantial evidence test, has also been rejected by the Second, Third, Fourth, Sixth, and Tenth Circuits as unsound in light of Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). *See, e. g.,* United States v. Glasser, 443 F.2d 994, 1006–1007 (2d Cir.), cert. denied, 404 U.S. 854, 92 S.Ct. 96, 30 L.Ed.2d 95 (1971); United States v. Grunberger, 431 F.2d 1062, 1066 (2d Cir. 1970); United States v. Boyle, 402 F.2d 757, 758 (3d Cir. 1968), cert. denied, 394 U.S. 934, 89 S.Ct. 1207, 22 L.Ed.2d 464 (1969); United States v. Chappell, 353 F.2d 83, 84 (4th Cir. 1965); United States v. Luxenberg, 374 F.2d 241, 249 (6th Cir. 1967); Bailey v. United States, 410 F.2d 1209, 1216 (10th Cir.), cert. denied, Freeman v. United States, 396 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232 (1969).

    The Fifth, Eighth, Ninth, and District of Columbia Circuits which previously applied a special test for circumstantial evidence also appear to be in the process of modifying it or to have abandoned it altogether. *See, e. g.,* United States v. Warner, 441 F.2d 821, 825–826, 831–832 (5th Cir.), cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971); Surrett v. United States, 421 F.2d 403, 405 (5th Cir. 1970); Easter v. United States, 441 F.2d 425, 427 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 83, 30 L.Ed.2d 64 (1971); United States v. Kye, 411 F.2d 120, 122 (8th Cir. 1969); United States v. Nelson, 419 F.2d 1237, 1240 (9th Cir. 1969); Thompson v. United States, 132 U.S.App.D.C. 38, 405 F.2d 1106, 1107–1108 (1968). *But see* United States v. McGlamory, 441 F.2d 130, 135 (5th Cir. 1971).

    The Seventh Circuit which at one time applied a circumstantial evidence test, United States v. McCarthy, 196 F.2d 616, 619 (7th Cir. 1952), appears not to have considered the issue since *Holland.*

7. Because defendant's department check sheets and settlement sheets had been marked up by the bank auditors in their investigation, the trial court ordered that

frared photograph and a regular photograph of the erased portion of defendant's May 29 settlement sheet (exhibit nos. 35 and 36, respectively). With regard to groups (1) and (2) and the originals from which group (3) were made, the testimony established that they were made in the regular course of business and that the bank required these documents to be completed daily and to be preserved thereafter. Having thus made out a prima facie case for admissibility under 28 U.S.C. § 1732 (1970), questions of custody, supervision, and control, relating as they do to an ultimate finding of authenticity, are properly for the jury. Johnson v. United States, 325 F.2d 709, 711 (1st Cir. 1963). Similarly the photographic exhibits (group 4) were verified by an F. B.I. handwriting expert, who testified that they were made at his direction and that they represented his observations. Such testimony provides sufficient foundation for admissibility. *See generally,* 7 Wigmore, Evidence §§ 790–797 (Chadbourn revision 1970). There has been no showing that the trial court abused its discretion in admitting the challenged exhibits.

Finally, the defendant appeals from the denial of her ninth requested instruction.[8] Her contention is that an inference may be drawn that the testimony of one Seguin would have been unfavorable to the government. *See* 2 Wigmore, Evidence § 285 (3d ed. 1940). The government notified the defendant that Seguin was on military duty in San Diego. The defense, however, requested neither his address nor that the government obtain his presence. In these circumstances the trial court properly found that Seguin was equally available to both sides and that no inferences were to be drawn either way from his absence. Thus defendant's requested instruction was properly denied. Lannom v. United States, 401 F.2d 504, 505 (9th Cir. 1968). *See also* 2 Wigmore, Evidence § 288 (3d ed. 1940).

Affirmed.

the documents be reproduced to eliminate the auditors' accentuation of the items comprising the basis of the government's case.

8. "The defendant is clothed with the presumption of innocence, she need not call or produce any witnesses; the Government has the entire burden to prove her guilty beyond a reasonable doubt; *the failure of the Government to call witnesses who could to some extent have contradicted defendant's testimony, if it were untrue, will justify a finding that their testimony would have been against the Government."* (Emphasis added.)