**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Clinton JOHNSON, Defendant-Appellant.**

**No. 72–1238.**

United States Court of Appeals, Fifth Circuit.

Dec. 4, 1972.

Joseph J. Petito, New York City, Samuel S. Forman, Miami, Fla. (Court appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Charles O. Farrar, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before COLEMAN, GOLDBERG and GODBOLD, Circuit Judges.

COLEMAN, Circuit Judge:

Clinton Johnson and two other individuals were indicted on three counts, as follows:

### Count I

Conspiring [21 U.S.C. § 963] [1] to import marijuana into the United States in violation of 21 U.S.C., § 952(a).

### Count II

Knowingly and intentionally importing approximately 63,000 grams of marijuana into the United States in violation of 21 U.S.C., § 952(a).

### Count III

Knowingly and intentionally possessing with intent to distribute approximately 63,000 grams of marijuana in violation of 21 U.S.C., § 841(a)(1) and (2).

Johnson was tried to the Court, without a jury. He was found guilty on all three counts and sentenced to concurrent terms of eighteen months imprisonment.

---

1. Johnson was charged in the indictment with conspiring to violate 21 U.S.C., § 952(a), but the citation to the appropriate conspiracy statute, 21 U.S.C. § 963 was omitted. Rule 7(c) of the Federal Rules of Criminal Procedure provides that such an omission shall not be grounds for dismissal of the indictment or reversal of the conviction if the omission did not mislead the defendant to his prejudice.

In his appeal Johnson challenges the sufficiency of the evidence as to each count of the indictment. We affirm.

A United States Customs Inspector, Homer Schwartz, testified that on August 7, 1971, in Miami International Airport, by using a dog trained to sniff out narcotics, he discovered two footlockers containing 133 pounds of marijuana. The footlockers, bound for Nassau, had been shipped from Jamaica. After tests had verified the presence of marijuana, the two footlockers were returned to the customs warehouse and placed under surveillance. Since Nassau was the destination of the shipment, the footlockers did not clear Customs in Miami and were allowed to go on to the Bahamas.

Anthony Houston, a Pan American employee, testified that *in Nassau* one Richard Sadler bribed him to examine and *clear* the footlockers for a return flight to Miami, where the footlockers would not go through Customs since they had already been pre-cleared in Nassau.

Harold Wilson, a special agent for United States Customs in Miami testified that on August 9, 1971, he observed the same two footlockers being unloaded from an aircraft which had arrived from Nassau. Porters placed them on the Pan American baggage carousel. Johnson, the appellant, was seen outside the customs enclosure near the Eastern Airlines baggage area. Johnson engaged in a conversation with an Eastern Airline agent who was standing behind a portable ticket counter. After there had been an exchange of some papers between Johnson and the agent, the agent placed baggage checks on the two footlockers. Sadler then met Johnson. The two men proceeded to the Eastern Airlines waiting area.

Andrew Hoffman, special agent with the Bureau of Customs, testified that on the occasion in question he observed Johnson and Sadler each take one footlocker off the Pan American baggage carousel and give it to a Pan American porter. Then, Sadler and Johnson proceeded down the sidewalk. Sadler went into the terminal area of the airport. Johnson went to a point just outside the customs enclosure area, where agent Hoffman observed the two footlockers being turned over to an Eastern Airlines agent at a portable counter.

In other words, Johnson took an active, affirmative part in getting the footlockers from the Pan American plane to the Eastern Airlines plane, destined for New York.

At this point, the situation rapidly deteriorated. Johnson and Sadler were arrested in the terminal after they had been under surveillance for thirty or forty minutes. Both men were searched. Baggage claim checks for the two footlockers were found on Sadler. Sadler also had an airline ticket for a flight from New York to Miami in the names of both Johnson and Sadler.

The government's star witness was Anthony Houston, who admitted his participation in the illegal importation scheme. Beginning in early 1971, Houston had been asked several times by Sadler to help him get items through Customs. Sadler called Houston and told him that he was coming to Nassau on Saturday, August 7, 1971. Houston met with Sadler on that date. Sadler told Houston that he wanted to get the footlockers out on Sunday, August 8, 1971, because "he had a few people from New York in Miami awaiting the arrival of the shipment from Nassau". Houston told Sadler that the shipment on Sunday was impossible. The two footlockers were shipped on Monday, August 9, 1971. After Sadler had been arrested in Miami, he called Houston a few days later and told him that "we got caught".

Houston admitted on cross-examination that he had never met Johnson and had never talked to him on the telephone.

On redirect Houston admitted that Sadler had told him that there was marijuana in the two footlockers.

*Johnson rested on the government's proof.*

The question, then, is: Was that proof sufficient as to any one of the three Counts?

This Circuit adheres to the following rule as to convictions based on circumstantial evidence:

"[W]here the evidence relied on to sustain a verdict is circumstantial, it must be such that the trier of fact could reasonably find that the evidence excludes every reasonable hypothesis, except that of guilt. Surrett v. United States, 421 F.2d 403 (5th Cir. 1970); Riggs v. United States, 280 F.2d 949 (5th Cir. 1960). This test is not simply whether in our opinion the evidence excludes every reasonable hypothesis of innocence, but rather whether the trier of fact might reasonably so conclude. United States v. McGlamory, 441 F.2d 130 (5th Cir. 1971); Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969); Odom v. United States, 377 F.2d 853 (5th Cir. 1967); Williamson v. United States, 365 F.2d 12 (5th Cir. 1966); Rua v. United States, 321 F.2d 140 (5th Cir. 1963); and Vick v. United States, 216 F.2d 228 (5th Cir. 1964),"

United States v. Sidan-Azzam, 5 Cir., 1972, 457 F.2d 1309, 1310.

See, also, United States v. Currier, 1 Cir., 1972, 454 F.2d 835, 838, n. 6.

Citing Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1940), we have said that "circumstantial evidence [is] to be viewed in the light most favorable to the government where a guilty verdict has been rendered", United States v. McGlamory, *supra.*

Johnson contends that there is insufficient circumstantial evidence to convict him on any of the three counts.

■ Under the concurrent sentence doctrine,[2] if the evidence was sufficient as to any of the counts a reversal is not in order.

■ In Count III Johnson was charged with "knowingly and intentionally possessing with intent to distribute 63,000 grams of marijuana". To support this charge the government had to prove that Johnson (1) knowingly possessed, (2) intentionally possessed, and that (3) such possession was with an intent to distribute.

*(1) Knowledge*

". . . [I]t is elementary that intent or guilty knowledge is susceptible to proof by either direct or circumstantial evidence or by both", Bishop v. United States, 10 Cir., 1968, 396 F.2d 762, 763. See, also, United States v. Harris, 1970, 140 U.S.App.D.C. 270, 435 F.2d 74, 89; Anderson v. United States, 8 Cir., 1969, 406 F.2d 529, 532; and Jackson v. United States, 8 Cir., 1964, 330 F.2d 679, 681. Knowledge is circumstantially shown by looking at the ". . . words or acts of the party charged with knowledge and . . . the facts and circumstances surrounding or attendant upon the act with which it is charged to be connected", United States v. Sheiner, 2 Cir., 1969, 410 F.2d 337, cert. denied 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76. See, also, United States v. Smallwood, 8 Cir., 1971, 443 F.2d 535, 541, and cases cited therein.

■ Applying that principle we consider the following facts, viewed collectively:[3] (1) Houston testified that Sadler said "he had a few people from New York in Miami awaiting the arrival of

---

2. Under the concurrent sentence doctrine if sentences on a multiple count indictment are imposed concurrently, it is unnecessary to consider questions raised as to every count, if the conviction can be sustained under one count, Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943).

3. In arriving at a verdict the trier of the fact is not required to look at the various bits of evidence in *isolation* or in a *vacuum*, United States v. Hutul, 7 Cir., 1969, 416 F.2d 607, 617; DeVore v. United States, 9 Cir., 1966, 368 F.2d 396, 399.

the shipment from Nassau", (2) Houston testified that Sadler called him and said "we got caught", (3) Houston admitted that he knew the footlockers contained marijuana, (4) *Sadler's airline ticket had the names of both Sadler and Johnson on it,* (5) Johnson's airline ticket found in his possession when arrested was dated August 8, 1971, for a flight from New York to Miami, (6) the date of Johnson's return flight from Miami to New York was August 9, 1971, and (7) Johnson materially assisted Sadler in moving the two footlockers from the Pan American luggage carousel to the Eastern Airlines baggage check-in.

These facts, considered as a whole, could reasonably support an inference beyond all reasonable doubt that Johnson's appearance and activity at a crucial point in this well devised, but detected, scheme was much more than merely a fortuitous encounter; indeed, that guilty participation was the only really reasonable explanation for what took place.

### (2) *Possession*

When Johnson took one of the footlockers off the Pan American luggage carousel and had it transported to the Eastern Airline baggage check-in, he had sufficient control over the footlocker to support a finding that he had constructive possession of the footlocker, United States v. Candanoza, 5 Cir., 1970, 431 F.2d 421, 425. See, also, Jackson v. United States, 9 Cir., 1969, 408 F.2d 306, 308.

### (3) *Possession with Intent to Distribute*

It was stipulated that the two footlockers contained 133 pounds of marijuana. The possession of a large quantity of narcotics supports the inference that distribution was intended. See United States v. Mather, 5 Cir., 1972, 465 F.2d 1035; United States v. Moore, 6 Cir., 1971, 452 F.2d 569, 573; and United States v. Ortiz, 10 Cir., 1971, 445 F.2d 1100, 1104, 1105.

The evidence as to Count III was sufficient to support the conviction under that Count.

Therefore, the judgment of the District Court is

Affirmed.