UNITED STATES of America, Appellee,

v.

Vicki GABRINER, Defendant, Appellant.

No. 77–1170.

United States Court of Appeals,
First Circuit.

Argued Dec. 6, 1977.
Decided Feb. 15, 1978.

Nancy Gertner, Boston, Mass., with whom Silverglate, Shapiro & Gertner, Boston, Mass., was on brief, for defendant, appellant.

Robert B. Collings, Asst. U. S. Atty., Chief, Criminal Division, Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant was convicted, after trial to the judge sitting without a jury, of making a false statement in an application for a passport and of conspiring to make that statement, in violation of 18 U.S.C. §§ 1542 and 371.[1] She claims four grounds for appeal: (1) that the trial court should have granted her motion for a judgment of acquittal[2]; (2) that she was the victim of bad faith, selective prosecution; (3) that she was denied her right to a speedy trial; and (4) that various court rulings concerned with her attempts to discover the government's electronic surveillance evidence were erroneous.

Her first claim requires us to give a thorough summary of the government's evidence against her. She did not present any evidence. On January 15, 1970, appellant's codefendant, James Reeves, submitted in person at the United States Passport Agency in Boston an application for a passport in the name of Robert John Mannetta. Because Reeves offered no identification other than a certified copy of a birth certificate, the clerk required him to have a witness sign an affidavit identifying him. Appellant appeared at the passport office and signed the following statement:

> "I solemnly swear that I am a citizen of the United States; that I reside at the address written below my signature; that I know the above named passport applicant is a citizen of the United States; that the statements made in his passport application executed on the date shown above are true to the best of my knowledge and belief; furthermore, I solemnly swear that I have known the applicant for 2½ years."

Phyllis Broker, a student at Northeastern University in Boston, testified that she was an acquaintance of Reeves' at school during January, 1970; that she saw him a couple of times a week for a few minutes at a time and at group meetings; that her acquaintance with him was limited to the Northeastern campus and related activities; that she knew him only as James Reeves; and that he answered to "Jimmy" or "James". She had never seen appellant before the day of the trial and had not recognized appellant's photograph when the government had shown it to her for purposes of identification.

Finally the state presented Reeves' probation officer during the period from May, 1971, to May, 1972 (more than one year after the passport application was submitted) who testified that he knew Reeves as "Jim" or "Jimmy".

In order to convict appellant the prosecution must show beyond a reasonable doubt that she "willfully and knowingly" made a false statement. 18 U.S.C. § 1542. We, like the district court, see this case turning on whether or not appellant knew Reeves' true name. It is this element of the offense that is at issue here. Appellant argues that there is no evidence whatsoever indicating that she knew Reeves by any name other than Robert John Mannetta. She points out that the probation officer's testimony is not relevant because he did not know Reeves until a year after the crime was allegedly committed and that Broker's testimony is not relevant because there is nothing in the record to connect her knowledge of Reeves' true name with appellant's knowledge. Indeed, appellant maintains the contrary is true since Broker expressly stated that she had never seen appellant and no testimony linked appellant to the Northeastern campus or to Broker's circle of acquaintanceship.

The district court, in finding that appellant did know Reeves' true name, relied principally on Broker's testimony and on a feeling that it is "simply inconceivable" that someone could know another person for two and a half years well enough to identify that person without knowing that

---

1. Her co-defendant, James Reeves, was convicted on the same two counts but did not appeal. Both Reeves and appellant were placed on one year probation with imposition of sentence suspended.

2. The motion was properly made at the close of the government's evidence and has been properly preserved.

person's true name. It inferred from Broker's testimony that Reeves was using his true name with friends and more generally in the Boston community. From these inferences the court further inferred that appellant, who knew Reeves well enough to identify him, must have known his true name.

In evaluating an appeal from a denial of a defendant's motion for a directed verdict of acquittal, we must evaluate the evidence in the light most favorable to the prosecution, with all inferences that may legitimately be drawn. *United States v. Scibelli,* 549 F.2d 222, 229 (1st Cir. 1977); *United States v. Klein,* 522 F.2d 296, 302 (1st Cir. 1975); *United States v. Doran,* 483 F.2d 369, 372 (1st Cir. 1973). The prosecution may prove its case by circumstantial evidence, and it need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt. *United States v. Concepcion Cueto,* 515 F.2d 160, 162 (1st Cir. 1975); *United States v. Currier,* 454 F.2d 835, 838 (1st Cir. 1972); *Dirring v. United States,* 328 F.2d 512, 515 (1st Cir. 1964). *See also Parker v. United States,* 378 F.2d 641, 644–45 (1st Cir. 1967). The trier of fact is free to choose among various reasonable constructions of the evidence. *United States v. Klein,* 522 F.2d 296, 302 (1st Cir. 1975).

But there is an important limit to the freedom of the trier of fact. The law requires "that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged." *Mullaney v. Wilbur,* 421 U.S. 684, 685, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This requirement exists to reduce the risk of convicting defendants by factual error. *In re Winship, supra,* 397 U.S. at 363, 90 S.Ct. 1068. The reasonable doubt standard is one way in which substance is given to the traditional presumption of innocence. *Id.*

We begin with the presumption, then, that when appellant signed the affidavit she thought Reeves' name was Mannetta. The state must introduce some evidence, circumstantial or otherwise, to rebut this presumption. We do not believe that it did. The mere fact that she knew someone for two and a half years cannot give rise to the inference that she lied about his name without some evidence that she should have known his true name.[3] The mere fact that someone in Boston,[4] wholly unconnected with the appellant, knew Reeves' true name does not supply the missing link. The fact that Reeves designated Broker as someone to whom his passport might be mailed indicates something about her relationship to Reeves, but nothing about her relationship to appellant or about appellant's relationship to Reeves. That Broker knew his true name indicates no more than that one person "with whom he was friendly knew his true name."[5] The inference the court drew—that therefore all persons with whom he was friendly had the same knowledge—is not permissible because it is based on a logical fallacy. The court's syllogism

---

**3.** The effective, misleading use of an assumed name is not confined to Shakespeare and Gilbert and Sullivan. Bigamists, draft dodgers, bail jumpers, and all kinds of refugees from justice (or injustice) resort to the device. Appellant, in effect, swore that her relationship with Reeves was cut from such a mold.

**4.** Appellant gave a New York address on her affidavit. The district court considered the possibility that someone from out of state might know Reeves by a different name. The court rejected that hypothesis, however, because appellant had a Massachusetts driver's license that was valid until June 30, 1971, and, therefore, "was not a stranger to Massachusetts." In the first place we note that, for all the evidence shows, appellant may have gotten her driver's license more than two and a half years before January of 1970 and resided out of state during the entire period she claimed to know "Mannetta". Moreover, the driver's license does not come close to linking appellant to the very narrow sphere in which the prosecution proved that Reeves was using his true name.

**5.** The probation officer's testimony suffers not only from the weakness of non-contemporaneity, but also from the same weaknesses as Broker's testimony. Nothing connects his knowledge to appellant's.

is——Broker is a friend of Reeves; Broker knew Reeves' true name; therefore, all friends of Reeves knew his true name. This is an obvious overgeneralization.

The government's burden was to prove that appellant was not only a friend of Reeves, but also knew his true name. We do not see that as an insurmountable task. In order to get by a motion to dismiss, the government could have introduced, for instance, some evidence to place appellant somewhere where Reeves was using his true name, shown that someone with whom appellant associated knew Reeves' true name, or even searched for some communication between Reeves and appellant under Reeves' true name. To be sure, it would have taken some investigatory effort to find any of this evidence, if any existed, but the government is not entitled to convictions simply because evidence it believes exists is not easy to find.

The only hard evidence in the case concerning the name Reeves used with appellant is that when Reeves presented himself, in her presence, to the United States government he did so under the name Mannetta. This is the only point in time when the government has shown any contact between appellant and Reeves. Reeves was holding himself out as Mannetta and had a certified birth certificate to support that name. Appellant, at that time, signed a sworn affidavit identifying Reeves as Mannetta. The prosecution bears the burden of coming forward with some evidence to support an inference that appellant had some other knowledge.

█ We conclude that the prosecution has done no more than prove that Reeves was using two names and that appellant identified him by his false name. Without some evidence that she knew his true name we cannot uphold the conviction. We need not reach the other grounds for appeal.

*Remanded with direction to enter a judgment of acquittal.*