**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Arturo M. CAMPA, Defendant-Appellant.**

No. 81–1236.

United States Court of Appeals,
First Circuit.

Argued Feb. 2, 1982.
Decided May 27, 1982.

---

Irwin G. Lichter, Miami, Fla., for defendant-appellant.

H. Manuel Hernandez, Asst. U. S. Atty., Hato Rey, P. R., with whom Raymond L. Acosta, U. S. Atty., San Juan, P. R., was on brief, for plaintiff-appellee.

Before GIBSON,* Senior Circuit Judge, BOWNES and BREYER, Circuit Judges.

* Of the Eighth Circuit, sitting by designation.

1. 21 U.S.C. § 841(a)(1) provides in pertinent part:

> [I]t shall be unlawful for any person knowingly or intentionally—
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]

2. 18 U.S.C. § 2 provides in pertinent part:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.

BOWNES, Circuit Judge.

Arturo M. Campa was convicted by a jury of aiding and abetting in the possession with intent to distribute, and distribution of, 158.2 grams of cocaine in violation of 21 U.S.C. § 841(a)(1)[1] and 18 U.S.C. § 2[2] (Count Eight) and of aiding and abetting in the possession with intent to distribute 820 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Eleven). The case started with a twelve-count indictment against six defendants. Five of the defendants pled guilty. Only Counts Eight and Eleven applied to Campa.

Campa raises five arguments on appeal: first, that the evidence adduced at trial was insufficient to prove aiding and abetting on Count Eight; second, that it was improper for the prosecution to display to the jury cassettes containing recorded conversations which were not going to be offered into evidence; third, that the prosecution made comments at trial which attempted to shift the burden of proof to the defendant and/or were comments on his right to remain silent; fourth, that a defendant may not be charged with aiding and abetting when no one is named as principal; and fifth, that defendant was denied effective assistance of counsel at trial and prior thereto.

The chain of events[3] leading to appellant's conviction began on September 22, 1980, when Puerto Rico Police Officer Manuel Suarez and other members of a task force[4] were contacted by Gerardo Palacio Rivera Velez, an informant, who told them that Angel Mendez Ayala, a subsequent co-defendant, had large quantities of cocaine

3. These facts are taken primarily from the testimony of the government's witness, Officer Suarez. Appellant did not testify and presented no witnesses.

4. This task force was made up of agents from the Drug Enforcement Administration, United States Customs, the Puerto Rico Police Department and the United States Coast Guard whose main function was to enforce federal narcotics laws. Officer Suarez regularly did undercover work for this task force.

to distribute. Officer Suarez and other members of the task force formulated a plan which would enable them to purchase one-eighth of a kilo of cocaine from Mendez. Through the informant, Officer Suarez made arrangements with Mendez for the purported purchase of the cocaine. Mendez took Officer Suarez to the apartment of Sierra Diaz, also an indicted codefendant, where the "buy" was confirmed. Sierra Diaz stated that he would contact appellant in Miami, and that the cocaine would be brought to Puerto Rico on the following day. Sierra Diaz agreed to contact Officer Suarez through Mendez and the informant when the cocaine was available.

On September 23, 1980, the informant contacted Officer Suarez and told him that Mendez had notified him that the cocaine was ready. Officer Suarez and the informant next met Mendez in a parking lot in front of Sierra Diaz's apartment. While Officer Suarez and Mendez went up to the apartment, the informant waited in the car. After entering the apartment, Officer Suarez was introduced to appellant. Sierra Diaz removed the cocaine from a plastic bag, sifted it, and allowed Officer Suarez to test it. Sierra Diaz weighed out one-eighth of a kilo and bagged it. Officer Suarez returned to his car with Mendez to get the $8,500 for payment of the cocaine. Sierra Diaz counted the money, putting it in stacks of $1,000 each. Appellant, who had been sitting across the table from Officer Suarez, picked up the money and placed it into an envelope and then put it back on the table. Before he left, Officer Suarez indicated that he would be interested in purchasing a kilo of cocaine at a later date. At all times throughout this transaction, Officer Suarez had a Kell transmitting and recording device attached to his body. The cassette recording of the transaction was marked as Government's Exhibit 1 for identification, but was not offered into evidence due to its alleged poor quality.

On October 15, 1980, Mendez contacted the informant and told him that one kilo of cocaine was available if Officer Suarez still wished to purchase it. Officer Suarez subsequently contacted Mendez and made arrangements to purchase the kilo for $62,000. The conversation between Officer Suarez, the informant, and Mendez was also recorded. This tape was marked as Government's Exhibit 2 and was introduced into evidence. The next day Mendez contacted the informant and asked him to get in touch with Suarez. Someone in Miami wanted assurance that the money would be there. Suarez later that night met with Mendez, showed him the money, and the two then proceeded to Sierra Diaz's apartment. Sierra Diaz agreed to make the necessary arrangements to have the kilo of cocaine brought up from Miami on the following day. These conversations were also recorded and the cassette containing the recorded conversations was marked for identification, but was not entered into evidence due to its poor quality.

On October 17, 1980, Mendez again contacted the informant who notified Suarez. Suarez telephoned Mendez and was told that only three-quarters of a kilo of cocaine would be available, not the full kilo as planned. Suarez agreed to purchase this for $42,500 and was told that it would be delivered the following day. The cassette of these conversations was marked in evidence as Government's Exhibit 4.

On October 18, 1980, Suarez and the informant went to Sierra Diaz's apartment house where they met Mendez. While the informant waited in the car, Suarez and Mendez went up to Sierra Diaz's apartment, where he met them at the door. Suarez observed appellant in the living room. Appellant asked Suarez if he had the money, and Suarez stated that he first wanted to test the cocaine. Appellant then said that he did not have the cocaine with him, but that it was in a nearby hotel. Appellant and Mendez left the apartment and returned a short time later carrying a briefcase which contained the cocaine. Appellant opened the bags of cocaine and let Suarez test it. Appellant then weighed and bagged the three-quarters of a kilo of cocaine and asked for the money. Suarez replied that he had left it in his car but

would go and get it. As Suarez was leaving the apartment, the task force agents entered and arrested the appellant and the others. This conversation was also recorded. The cassette was marked as Government's Exhibit 5 for identification, but was not offered in evidence due to its poor quality.

On February 10, 1981, after a two-day trial, a jury found appellant guilty on Counts Eight and Eleven of the indictment.

*Sufficiency of the Evidence*

▌ The first argument raised by appellant is that there was insufficient evidence that he aided and abetted Sierra Diaz in possessing with intent to distribute, and distribution of, cocaine (Count Eight of indictment—September 23, 1980 transactions).[5] In examining this contention, we view the evidence, together with all reasonable inferences that may legitimately be drawn therefrom, in the light most favorable to the government. *United States v. Lochan*, 674 F.2d 960 (1st Cir. 1980); *United States v. Indorato*, 628 F.2d 711, 719 (1st Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980), citing *United States v. Gabriner*, 571 F.2d 48, 50 (1st Cir. 1978). The burden is on the government to prove beyond a reasonable doubt each and every element of the crime charged. *Id.* at 50. The government may prove its case through the use of circumstantial evidence so long as the total evidence, including reasonable inferences, is sufficient to warrant a jury to conclude that the defendant is guilty beyond a reasonable doubt. *United States v. Mehtala*, 578 F.2d 6, 10 (1st Cir. 1978); *United States v. Gabriner*, 571 F.2d at 50. The court's role is not to assess the credibility of the witnesses, that judgment is left to the trier of fact. *United States v. Nardi*, 633 F.2d 972, 974 (1st Cir. 1980).

▌ The elements that the government was required to prove in this case were that appellant "associated himself with the venture, that he participated in it as something he wished to bring about, that he sought by his action to make it succeed." *United States v. Martinez*, 479 F.2d 824, 829 (1st Cir. 1973), citing *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938). *See United States v. Indelicato*, 611 F.2d 376, 385 (1st Cir. 1979); *United States v. Tarr*, 589 F.2d 55, 59 (1st Cir.1978). Mere presence at the scene and knowledge that a crime is being committed is generally insufficient to establish aiding and abetting. *Id.* at 59. The government must prove some affirmative participation by the aider and abettor. *United States v. Indelicato*, 611 F.2d at 385; *United States v. Martinez*, 479 F.2d at 829. The vital element to be proven is that the aider and abettor shared in the principal's essential criminal intent. This may be inferred from the attendant facts and circumstances. *United States v. Tarr*, 589 F.2d at 59; *United States v. Beck*, 615 F.2d 441, 449 (7th Cir. 1980).

▌ The evidence of appellant's participation in the September 23 transaction (Count Eight) was as follows. Suarez testified that in setting up the "buy," Sierra Diaz stated that he would "make a phone call to Miami, Florida, to make contact with Arturo Campa, and Arturo Campa would have a man that would bring it [the cocaine] up."[6] On the following day, when Officer Suarez went to Diaz's apartment, he was introduced to a person whom he later identified as Campa (appellant). Throughout the entire transaction, appellant sat across the table from Suarez. After Sierra Diaz counted the money, appellant stood up and placed it in an envelope and then returned it to the table. Appellant remained

---

**5.** Count Eight of the indictment reads in pertinent part as follows:

> On or about September 23, 1980, in Santurce, Puerto Rico and within the jurisdiction of this Court, ANGEL MENDEZ–AYALO and ARTURO M. CAMPA, defendants herein, did knowingly and intentionally aid and abet Jose Francisco Sierra Diaz in knowingly and intentionally unlawfully possessing with in-

tent to distribute and distributing of about 158.2 grams (gross weight) of cocaine, a Schedule II Narcotic Drug Controlled Substance.

**6.** No objection was made to this statement at trial. It appears clearly admissible under Fed. R.Evid. 801(d)(2)(E) anyway.

in the apartment with the other codefendants and the money when Suarez left.

Appellant argues that the sale was completed before he placed the money into the envelope and, as such, any action he took could not be found as having aided and abetted the transaction. The facts refute this argument completely. Appellant was not a happenstance spectator; he was one of the prime movers in the deal.

*The Tape Recordings*

Appellant's next two arguments relate to the five cassette recordings of various conversations during the drug transactions which the government brought to the trial. Appellant first argues that none of the recordings were offered in evidence and that the display of them to the jury was prejudicial and unfair because they raised inferences and conjectures on the part of the jury that defendant must be guilty of something. In the alternative, appellant urges that, even if this court finds that two of the recordings were entered into evidence, they should not have been because they were hearsay.

First of all, the transcript of the proceedings below does not support appellant's argument that none of the recordings were offered in evidence. Two cassette recordings, Government's Exhibits 2 and 4, were in fact admitted into evidence. The contention that this was a mistake by the court reporter is utterly without foundation. The record shows clearly that the judge, the prosecutor, and defense counsel knew that the two cassettes were being marked as full exhibits.

■ Appellant's contention that the tape recordings introduced in evidence were inadmissible because of hearsay deserves short shrift. No objection to their admission was made. Unless there are unusual circumstances, not present here, an appellate court does not consider questions of law not raised below. *United States v. Miller*, 636 F.2d 850, 853–54 (1st Cir. 1980). Moreover, appellant's substantive argument that, because a conspiracy was not charged, statements of a coconspirator made outside the presence of a defendant are not admissible is simply not the law. Statements of one codefendant are admissible against another, even in the absence of a conspiracy count, where there is independent evidence of a concert of action. *United States v. Van Scoy*, 654 F.2d 257 (3d Cir. 1981); *Ottomano v. United States*, 468 F.2d 269 (1st Cir. 1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973); *United States v. Williams*, 435 F.2d 642 (9th Cir. 1970), *cert. denied*, 401 U.S. 995, 91 S.Ct. 1241, 28 L.Ed.2d 547 (1971). *See* Fed.R. Evid. 801(d)(2)(E).

The issue of concert of action, as it applies to the question of admissibility of evidence, is determined by the trial judge. "[I]f it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible." *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977). *See also United States v. Patterson*, 644 F.2d 890, 893–97 (1st Cir. 1981); *United States v. Nardi*, 633 F.2d at 974; *United States v. David E. Thompson, Inc.*, 621 F.2d 1147, 1153 (1st Cir. 1980); *United States v. Martorano*, 557 F.2d 1, 11 (1st Cir.), *pet. for reh'g denied*, 561 F.2d 406 (1st Cir. 1977), *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978).

Because no objection was made, the court was not required to make a *Petrozziello* finding. Our review of the evidence convinces us that there was a sound evidentiary basis for the admission of the tape recordings.

■ We next turn to appellant's contention that it was improper for the government to have marked for identification the remaining three tapes when it never had any intention of introducing them into evidence. Appellant argues that the mere showing of these recordings before the jury offends "our basic notion of fairness due to the speculation and conjecture that human nature inherently attaches to the appearance of numbers." The government responds by stating, as it did below, that the

three tapes were not introduced into evidence because of their poor quality, and that the purpose of identifying the recordings was to preclude appellant's trial counsel from arguing that the government was trying to hide something by not presenting them to the jury.

In support of his argument, appellant relies upon two cases: *United States v. Kwitek*, 433 F.2d 18 (7th Cir. 1970), *appeal after remand*, 467 F.2d 1222, *cert. denied*, 409 U.S. 1079, 93 S.Ct. 702, 34 L.Ed.2d 668 (1972); and *United States v. Cadena*, 585 F.2d 1252 (5th Cir. 1978). We find *Kwitek* inapposite and *Cadena* tenuous. In *Kwitek*, the court held that constitutional error had been committed in admitting into evidence two revolvers, which were the fruit of an illegal search. The court stated that prejudicial error had been committed by permitting the revolvers to be discussed and displayed before the jury, and that a cautionary instruction given by the court that all testimony concerning the weapons was not to be considered by the jury could not obviate the inflammatory effect of these weapons. 433 F.2d at 20.

In *United States v. Cadena*, 585 F.2d 1252, 1264, several bales of marijuana had been marked for identification by the government, but inadvertently had not been introduced into evidence. The court held that the appellants were not prejudiced by the prosecutor's display of the bales. It stated that as long as proof of the prohibited substance is made beyond a reasonable doubt, the substance itself need not be put into evidence. Appellant seeks to distinguish *Cadena* from the facts of our case because there the failure was inadvertent, while here the government purposely intended not to introduce the cassettes.

 Although it is true that the government never intended to introduce the tapes into evidence, we cannot conclude that its decision to bring them to court was in the hope that their presence would prejudice the defendant. We accept the "poor quality" reason, but point out that it would have been better and safer for the government to advise defense counsel outside the presence of the jury that the tapes were available for listening and that it did not intend to introduce them. We think in this case the government acted innocently, albeit negligently, but, as a general rule, material should not be displayed to the jury unless the government intends to offer it in evidence. It is the evidence, not materials marked for identification, that must form the basis of the jury's decision.[7]

 Appellant next argues that certain government comments concerning the cassettes made during the course of the trial were an attempt to shift the burden of proof and/or constituted a comment on defendant's right to remain silent and not present evidence. The law is well-settled that the fifth amendment forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt. *Lussier v. Gunter*, 552 F.2d 385, 388–89 (1st Cir. 1977), citing *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The test is whether the statements could reasonably be construed by a jury as "intentionally aimed at commenting upon defendants' failure to take the stand." *United States v. Savarese*, 649 F.2d 83, 87 (1st Cir. 1981), quoting *United States v. Kubitsky*, 469 F.2d 1253, 1255 (1st Cir. 1972), *cert. denied*, 411 U.S. 908, 93 S.Ct. 1536, 36 L.Ed.2d 198 (1973). *See Borodine v. Douzanis*, 592 F.2d 1202, 1210–11 (1st Cir. 1979). It is equally well-settled that the burden is on the government to prove beyond a reasonable doubt every element of the crime charged and that this burden may not be shifted to the defendant. *United States v. Gabriner*, 571 F.2d at 50.

 The comments which appellant finds prejudicial occurred on two separate occasions. First, the government was marking tape number 1 for identification when the following transpired:

MR. AGUAYO: Your Honor, at this time the Government will not submit this

---

7. Officer Suarez testified in detail about the tape recorded conversations.

cassette into evidence for the simple reasons as stated by the witness that it was not transcribed, however the purpose for identifying it is that if it is needed for any use either by this court or by defense for whatever, it is available.[8]

THE COURT: You try your case.

The second comment occurred as follows:

MR. EFRON: Your Honor, first of all I would like to ask Brother Counsel if Exhibit 1, 3 and 5 will be heard by the jury.

. . . .

MR. AGUAYO: Those items which have been marked as Government's Exhibits for identification 1, 3 and 5, I believe, the cassettes which the government which intends to put into evidence and to be heard by the ladies and gentlemen of the jury, will be those items which have been marked for identification 2 and 4.

As stated previously by the witness Felix Jimenez, those items which are marked 1, 3 and 5, were Kell recording cassettes, Kell cassettes and because of the poor quality, they were not transcribed. However, they were brought here for the purpose that if the defense wishes to hear them, he is free to use them as he may choose or if the Court chooses to hear them, they can hear them.

We do not find that the prosecutor's statement could have been reasonably construed by a jury as "intentionally aimed at commenting upon defendant's failure to take the stand," nor upon his right not to put on a defense. *See United States v. Savarese,* 649 F.2d at 87. Nor do we think that the prosecution was attempting to shift the burden of proof to appellant. Although the statements should not have been made before the jury, taken at face value they were a rational explanation of the prosecutor's reason for bringing the tapes

to court. Moreover, any possible prejudice was fully taken care of in the court's jury instructions where it was made clear that appellant was not required to prove his innocence or produce any evidence, and that no inference could be drawn from his choosing not to testify.

*The Lack of a Principal*

Appellant next argues that he could not be charged with aiding and abetting because no principal was ever identified and convicted of having committed the substantive offense. While it is true that Count Eleven does not name anyone as a principal, Count Eight clearly does.

 Proving beyond a reasonable doubt that a specific person is the principal is not an element of the crime of aiding and abetting. The identity of the principal need not be established, nor need the principal be convicted. The prosecution need only prove that the substantive offense had been committed by someone and that the defendant aided and abetted him. *United States v. Harper,* 579 F.2d 1235, 1239 (10th Cir.), *cert. denied,* 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978); *Hendrix v. United States,* 327 F.2d 971, 975 (5th Cir. 1964). *See United States v. Martinez,* 479 F.2d at 829. As the court stated in *United States v. Staten,* 581 F.2d 878, 887 (D.C.Cir.1978): "To be sure, there must be a guilty principal before there can be an aider and abettor, but here the proofs connoted plainly enough that somebody was culpable.... It was not essential that the principal in the operation be identified so long as someone held that status."

As a final argument,[9] appellant contends that he was denied effective assistance of counsel at trial and prior thereto, in contravention of his sixth amendment rights. Appellant alleges that his court-appointed attorney's performance in representing him

---

**8.** This was not objected to by trial counsel, but the government was "reprimanded" by the court.

**9.** A further issue dealing with the location of the government's informant was argued in appellant's brief. At oral argument, appellant's counsel advised us that the government did in

fact provide an address, as the trial court had ordered, and that the informant could not be located there. After our review of the evidence, we fail to see how the informant could have helped appellant. It was not the informant who led the government to appellant; it was his own participation in the transactions.

was such as to amount to little or no representation. In support of this claim, he relies on the following: that counsel met with him only five times prior to trial and that all visits were of brief duration; that counsel failed to summon witnesses or present a defense; and that counsel made no objections at trial, although the transcript is allegedly replete with objectionable prejudicial testimony.

■ This circuit has adopted the "reasonably competent assistance" standard in reviewing such claims. This means that the quality of a defense counsel's representation should be within the range of competence of attorneys in criminal cases. *United States v. Thomann*, 609 F.2d 560, 566 (1st Cir. 1974); *United States v. Maguire*, 600 F.2d 330, 332 (1st Cir. 1979); *United States v. Bosch*, 584 F.2d 1113, 1121 (1st Cir. 1978). Under this standard, "effective representation is not the same as errorless representation." *United States v. Bosch*, 584 F.2d at 1121, citing *Marzullo v. Maryland*, 561 F.2d 540, 543, 545 (4th Cir. 1977), *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1185, 56 L.Ed.2d 394 (1978). Application of this standard does not mean that a court should "second guess reasoned choices between trial tactics," nor that defense counsel in order to protect himself against allegations of inadequacy must "waste the court's time with futile or frivolous motions." *United States v. Bosch*, 584 F.2d at 1121, citing *Cooper v. Fitzharris*, 551 F.2d 1162, 1166 (9th Cir. 1977), *appeal after remand*, 586 F.2d 1325 (1978), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979); and *United States v. Wright*, 573 F.2d 681, 683–84 (1st Cir.), *cert. denied*, 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792 (1978); *Moore v. United States*, 432 F.2d 730, 737 (3d Cir. 1970).

■ We cannot, on direct appeal, pass on appellant's outside-the-record-claim that his counsel conferred with him infrequently and for short durations of time. *See United States v. Santiago Barbosa*, 666 F.2d 704 at 708 n.6 (1st Cir. 1981). Even assuming, however, that this claim is true, appellant

bears the burden of establishing actual prejudice. *United States v. Ritch*, 583 F.2d 1179, 1183 (1st Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978), a burden which has not been met here. The facts of this case demonstrate quite the opposite. Appellant's trial counsel entered the picture quite late because appellant had been dissatisfied with his previous counsel and dismissed him.[10] Upon entering the case, counsel filed numerous motions with the court, including: a motion for severance, a motion requesting that appellant be transferred to an alternate prison facility, a motion to dismiss the indictment under the Speedy Trial Act, and motions requesting numerous jury instructions. At trial, appellant's attorney extensively cross-examined the government's witnesses, particularly Officer Suarez. Although trial counsel did not hit pay dirt, this was because there was none, not that he missed it. We do not perceive how more frequent and longer pretrial visits would have made a difference.

Appellant also claims that his counsel failed to summon witnesses or present a defense. Yet, he fails to mention what witnesses or defense was available. This was a case of a face-to-face sale of narcotics to an undercover police officer. If the jury believed Officer Suarez, and they must have, it was an open and shut case. Nor can we accept appellant's claim that the trial transcript is replete with objectionable material, which trial counsel failed to object to. Appellant fails to point out any specific instances and we have found none that would have made any difference.

We find that, under the circumstances, appellant's trial counsel was reasonably competent.

*Affirmed.*

---

**10.** This speaks for itself.