16 F.3d 414
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Kurt J. WITTEK, Defendant-Appellant.
 No. 92-5774.
 United States Court of Appeals, Fourth Circuit.
 Argued June 9, 1993.
Jan. 27, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City. Terrence W. Boyle, District Judge. (CR-92-8-CR-BO)
 Douglas Everette Kingsbery, Tharrington, SMITH & Hargrove, Raleigh, NC., for appellant.
 J. Gaston B. Williams, Asst. U.S. Atty., Raleigh, NC, for appellee.
 Margaret Person Currin, U.S. Atty., Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before PHILLIPS and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 
 OPINION
 BUTZNER
 
 1
 Kurt J. Wittek appeals a judgment entered on the verdict of a jury convicting him of aiding and abetting a director in indirectly receiving funds of a federally insured institution in violation of 18 U.S.C. Secs. 1006 & 2 and also convicting him of bank bribery in violation of 18 U.S.C. Sec. 215(a).
 
 
 2
 Wittek asserts that the government's evidence was insufficient to convict him of aiding and abetting a bank officer in violating Sec. 1006 because the government failed to prove that the alleged principal, Mark W. M. Parker, Chairman of Eastern Savings and Loan Association (Eastern), violated the statute. Wittek also contends that because the transaction underlying his conviction did not have a natural tendency to injure or defraud Eastern the government failed to satisfy an essential element of a Sec. 1006 offense.
 
 
 3
 In addition, Wittek argues that his bank bribery conviction under Sec. 215(a) should be overturned because the indictment failed to provide him with adequate notice of the charged conduct. He also assigns error to the district court's admission of the testimony of an Eastern officer who expressed the opinion that Parker authorized payment of more than $800,000 in overdrafts on Wittek's checking accounts. According to Wittek, this admission was prejudicial, entitling him to reversal and a new trial on the bank bribery count.
 
 
 4
 Because we conclude that there was sufficient evidence to support a reasonable juror's determination that the principal, Parker, violated Sec. 1006, we affirm Wittek's conviction for aiding and abetting Parker as charged in count 6. Because admission of the opinion testimony about the approval of Wittek's overdrafts on his Eastern checking accounts was improper under Fed.R.Evid. 701 and was unfairly prejudicial to Wittek, we vacate the judgment with respect to count 7 and remand this count to the district court for further proceedings.
 
 
 5
 * Using his own funds and the proceeds of a $1,600,000 loan from Jack Alfandre and Barrett Penan, Parker acquired a controlling interest in Eastern and became chief executive officer and chairman of the board. Wittek and Parker had been close friends and business associates since their college days. Parker was vice president of Wittek's real estate firm, Kurt Wittek Development Corporation, and a partner in his acquisition group, Kurt Wittek Associates. Wittek had a $600,000 personal line of credit and several checking accounts at Eastern.
 
 
 6
 When an installment of $165,000 became due on the Alfandre-Penan loan, Parker did not have the necessary funds to make payment. He turned to Wittek who, although willing to lend him the money, expressed concerns about his own liquidity. Wittek had withdrawn $500,000 of his line of credit, leaving him only $100,000.
 
 
 7
 Parker was the government's principal witness with respect to count 6, which charged Wittek with aiding Parker in unlawfully receiving money from Eastern. Parker had pled guilty to unrelated crimes. He testified pursuant to a plea agreement. Parker testified about the loan from Wittek: "We talked about extending [Wittek's] line of credit so that he would not suffer any liquidity impairment by loaning me any money." Parker also testified that, although he had no specific recollection, he believed that he "set in motion the actions necessary to extend the line of credit from six hundred thousand to seven hundred thousand dollars."
 
 
 8
 The same day that Eastern increased his line of credit to $700,000, Wittek wired all of the funds available in his enhanced line of credit--$200,000--to his bank account in Norwalk, Connecticut. The next day he wired $175,000 to Parker's account in a Texas bank. This transfer enabled Parker to deposit a check in his Eastern account for $165,000. Parker's wife then wrote a check on the Eastern account for $165,000 to pay the installment due on the Alfandre-Penan loan. Without the money from Wittek, Parker could not have made this payment. Parker also testified that he did not know that the funds he had accepted came from Wittek's line of credit at Eastern.
 
 II
 
 9
 Section 1006 imposes criminal penalties upon any bank officer who "participates or shares in or receives directly or indirectly any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any such corporation, institution, or association...." Section 2(a) provides: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."
 
 
 10
 Wittek claims that there was insufficient evidence to convict him of aiding and abetting Parker because Parker was not convicted as a principal and because at trial Parker denied knowledge of the source of the loan he received from Wittek.
 
 
 11
 Wittek's argument lacks merit. Conviction of the principal is not a requisite element of the crime of aiding and abetting. United States v. Horton, 921 F.2d 540, 543-44 (4th Cir.1990); United States v. Campa, 679 F.2d 1006, 1013 (1st Cir.1982). It was necessary, however, for the government to prove that Parker had violated Sec. 1006. The district court properly instructed the jury on the elements of a Sec. 1006 violation. The court emphasized that the government must prove beyond a reasonable doubt that Parker knowingly, with intent to defraud Eastern, received directly or indirectly through any transactions money belonging to Eastern.
 
 
 12
 The appellate standard for determining the sufficiency of the evidence is set forth in Glasser v. United States 315 U.S. 60, 80 (1942), as follows: "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."
 
 
 13
 Despite Parker's profession of ignorance about the source of the money, the jury could reasonably have found that he knew that the funds came from Wittek's line of credit at Eastern. The jurors were not obliged to accept Parker's uncontradicted testimony. It was for them to weigh his credibility in light of all the facts. Wood v. Comm'r, 338 F.2d 602, 605 (9th Cir.1964). Wittek's concern about his own liquidity, the arrangement to increase Wittek's line of credit in an amount sufficient to accommodate Parker, and the routing of the funds through four accounts at three institutions provided substantial circumstantial evidence of Parker's knowledge. The same evidence demonstrated Parker's intent to defraud Eastern by knowingly using its funds for an illegal purpose. The government did not need to show that Parker's motive was to defraud Eastern. The illegal diversion of Eastern's funds to increase Wittek's line of credit deprived Eastern of money that it could have lent for lawful purposes. See generally United States v. Parekh, 926 F.2d 402, 408 (5th Cir.1991).
 
 III
 
 14
 In count 7, the government charged that Wittek violated 18 U.S.C. Sec. 215 by offering Parker $175,000 with intent to influence or reward him in connection with Wittek's business or transactions at Eastern.
 
 
 15
 We vacate Wittek's conviction on this count because the district court should not have admitted an Eastern officer's testimony that in his opinion Parker had authorized payment of checks totalling more than $800,000 drawn against insufficient funds on Wittek's account.
 
 
 16
 The overdrafts occurred both before and after Wittek loaned Parker $175,000. The officer testified that he would take the overdrafts to Eastern's president, who would not tell him immediately to pay the checks. According to the officer, the president would instruct him later that Eastern would honor the overdrafts. The officer testified that it was his opinion that Parker, as chairman of Eastern's board, told the president to pay the checks. The officer's testimony disclosed that he had no actual knowledge that Parker authorized payment of the checks. Moreover, the evidence showed that the president had the authority to pay the checks without consulting Parker.
 
 
 17
 Federal Rule of Evidence 701 governs the admission of lay testimony and generally limits its scope to facts about which a witness has personal knowledge. Opinions or deductions of lay witnesses are not admissible unless they are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." Fed.R.Evid. 701. The officer's opinion did not satisfy the two requirements of Rule 701.
 
 
 18
 This opinion forged the critical link in the government's theory of Wittek's culpability with respect to count 7. Without the opinion Wittek would have been acquitted as a matter of law. Because improper admission of the opinion prejudiced Wittek, we vacate the judgment on this count and remand it for further proceedings.
 
 IV
 
 19
 Wittek also assigns error to the district court's denial of a motion for a bill of particulars. Wittek sought the identity of the business or transactions for which he allegedly rewarded or intended to influence Parker as charged in count 7.
 
 
 20
 At the trial it became clear that the transactions were the bank's payment of Wittek's checks when he lacked sufficient funds in his accounts. Inasmuch as we have vacated the judgment on count 7 and Wittek now knows what these transactions were, we find it unnecessary to address the assignment of error concerning the bill of particulars. If the government elects to retry Wittek on count 7, the prosecutor should furnish a bill of particulars which describes any business or transactions other than the checks on which the government relied.
 
 
 21
 We find no cause for reversal in Wittek's other assignments of error.
 
 
 22
 The judgment on count 6 is affirmed; it is vacated with respect to count 7, and this count is remanded to the district court for further proceedings.
 
 
 23
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED