**UNITED STATES of America**

v.

**Willie HORTON.**

**Crim. No. 89–00180–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 10, 1989.

---

David B. Smith, Richard J. Brownell, English & Smith, Alexandria, Va., for defendant.

Debra S. Straus, Sp. Asst. U.S. Atty., Constance H. Frogale, Asst. U.S. Atty., Alexandria, Va., for the U.S.

## ORDER

ELLIS, District Judge.

This first degree murder conviction is before the Court on defendant's post-verdict motion for a new trial pursuant to Rule 33, Fed.R.Crim.P. The murder occurred in the shower of Cellblock Two at the Maximum Security Facility of the Lorton Reformatory. The victim was stabbed nine times—once in the chest, once in the abdomen and seven times in the back and buttocks. The chest stab wound penetrated the heart and caused the victim's death.

Two guards and one inmate testified that the only other inmates in the shower area with the victim at the time of the stabbing were the defendant, Darren Green and James DaCoster, the two co-defendants who pled guilty to voluntary manslaughter. Green and DaCoster were known to be defendant's friends. The three lived in adjoining cells on the upper tier of Cellblock Two. Testimony established that these three and the victim entered the shower area on the lower tier during the same time period, but only defendant and the two co-defendants exited. Trial testimony also established that following the stabbing all three returned "briskly" to their cells.

There was one eyewitness. Inmate Steven Lofton testified that just prior to the incident, defendant, together with DaCoster and Green, came to his cell, and defendant warned Lofton not to go into the shower area because defendant was going to fight the victim. Lofton testified that shortly thereafter he heard a scream, looked down into the shower area from the upper tier balcony, and saw defendant stab the victim once in the stomach and then several times in the back as the victim attempted to flee. According to Lofton the victim was already bleeding from the chest when he saw defendant stab him in the abdomen. Lofton also testified that Green and DaCoster were standing nearby, apparently blocking the victim's exit from the shower area. Inmate Lofton further testified that immediately following the stabbing, he saw defendant go to the bars of the lower tier gate, but he did not see what happened at that point. Although Lofton saw only defendant in the possession of a shank, two shanks were recovered in the shower area and a third shank that Lofton identified as the one in defendant's hand was found behind a radiator on the lower tier. In addition to this eyewitness testimony, a correctional officer at the far end of the upper tier saw an inmate who looked like DaCoster "tussling" in the shower.

In closing argument, defendant's counsel sought to focus the jury's attention on various possibilities of what could have occurred in the shower, other than a murder by defendant. Manifestly, counsel's objective was to suggest to the jury that DaCoster and Green could well have been the persons who stabbed the victim. Thus, counsel repeatedly pointed to evidence that

DaCoster was involved in an altercation with the victim and that three shanks were found, all of which were of a size and shape consistent with the victim's wounds. Defense counsel stressed that the scissors shank found in the shower appeared to have blood on it.[1] Also underscored by defense counsel in his closing was that inmate Lofton saw neither the entire incident, nor all nine stab wounds and that defendant's mere proximity to the crime did not warrant a conclusion of guilt.

Although the indictment included an aiding and abetting charge under 18 U.S.C. § 1111 and § 2, the jury was not instructed on aiding and abetting. The government had initially requested such an instruction, but withdrew it when defense counsel objected. Not long after commencement of the jury's deliberations, a juror sent a note to the Court with the following questions: (1) "Do you have to inflict the body injury, or two, be the one to inflict the fatal injury to be convicted of first-degree murder?" All counsel agreed with the Court that the answer to this question was "no." The government suggested that an aiding and abetting instruction would be the appropriate response to the question. The defendant objected, arguing, in essence,

(1) that the government's theory of the case was that defendant was guilty as the principal,

(2) that the government had withdrawn its proposed aiding and abetting instruction, and

(3) that there was insufficient evidence of a principal other than the defendant.

In response, the government adhered to its theory that the defendant inflicted the fatal blow, but contended that the evidence also warranted an aiding and abetting instruction. The government further pointed out that defense counsel's closing argument suggested to the jury the possibility that DaCoster or Green may have stabbed the victim. Ultimately, the Court reconvened the jury, gave the aiding and abetting instruction, and allowed counsel further closing arguments for the purpose of address-

ing the supplemental instruction. In this regard, defendant's counsel argued chiefly that there was not sufficient evidence to establish that DaCoster and Green were guilty of first degree murder, and if the jury could not find them guilty, it could not convict the defendant. For its own part, the government reiterated its theory that the defendant was the principal actor, but also asked the jury to convict defendant, alternatively, as an aider and abettor based on the evidence presented. The jury thereafter resumed its deliberations and ultimately returned a verdict of guilty of murder in the first degree.

Defendant now seeks a new trial under Rule 33, Fed.R.Crim.P., on the grounds (1) that the aiding and abetting instruction was unsupported by, and inconsistent with, the evidence and the government's theory of the case, and (2) that defendant was unfairly surprised by the use of the supplemental instruction with the result that counsel's closing argument was prejudiced.

At the outset, it is important to acknowledge the well-settled proposition that a motion for a new trial is committed to the sound discretion of the trial court and that denials of such motions are not overturned absent a clear abuse of the discretion. *United States v. Arrington,* 757 F.2d 1484, 1485–86 (4th Cir.1985); *United States v. Wechsler,* 406 F.2d 1032, 1033 (4th Cir. 1969). Rule 33, Fed.R.Crim.P., simply provides a trial court the authority to grant a new trial "if required in the interest of justice." In general, courts appropriately do not favor motions for a new trial and exercise great caution in granting them. *United States v. Troutman,* 814 F.2d 1428, 1455 (10th Cir.1987); *United States v. Page,* 828 F.2d 1476, 1478 (10th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *Arrington,* 757 F.2d at 1486.

■ Analysis of the questions presented properly begins with the following sensibly settled principles. First, "the necessity, extent, and character of any supplemental instructions to the jury are matters

---

1. This argument was based on a correctional officer's equivocal testimony. Serological analysis did not disclose the presence of any blood on the shank.

within the discretion of the district court." *United States v. Braverman*, 522 F.2d 218 (7th Cir.), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975). *Accord United States v. Keck*, 773 F.2d 759 (7th Cir.1985); *United States v. Andrew*, 666 F.2d 915 (5th Cir.1982); *United States v. Neiss*, 684 F.2d 570 (8th Cir.1982); *United States v. Jackson*, 482 F.2d 1167, 1177 (10th Cir.1973), *cert. denied*, 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974). On the necessity for the supplemental instruction, the Supreme Court teaches that "when a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). *Accord United States v. Duvall*, 846 F.2d 966 (5th Cir.1988). Thus, reviewing courts recognize that a supplemental charge is appropriate where, as here, "it responds adequately to the jury's request for clarification." *United States v. Velez*, 652 F.2d 258, 262 (2nd Cir.1981) [citing *United States v. Viserto*, 596 F.2d 531, 539 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979)]. Even where a supplemental charge is defective, reversal is not required absent evidence of some prejudice to the defendant. *Velez*, 652 F.2d at 262 [citing *United States v. Gleason*, 616 F.2d 2, 21 (2d Cir.1979), *cert. denied*, 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980)]. Here, the supplemental instruction was submitted in direct response to the jury's question. Moreover, contrary to defendant's contention, there was ample evidence presented at trial to justify such an instruction. True, the government's theory of the case was consistently that defendant was principally responsible for the victim's fatal stab wounds. But the propriety of an aiding and abetting instruction depends on the evidence taken as a whole, and not solely on the interpretation the government advances for that evidence. *See United States v. Gordon*, 812 F.2d 965, 969 (5th Cir.) (even where defendant is charged only as a principal, an aiding and abetting instruction is appropriate where the evidence supports such a charge), *cert. denied*, 483 U.S. 1009, 107 S.Ct. 3238, 97 L.Ed.2d 743 (1987); *see also United States v. Kegler*, 724 F.2d 190 (D.C.Cir.1984); *United States v. Duke*, 409 F.2d 669 (4th Cir.1969), *cert. denied*, 397 U.S. 1062, 90 S.Ct. 1497, 25 L.Ed.2d 683 (1970). In the case at bar, the indictment explicitly charged defendant as the principal in this murder or, alternatively, as one who aided and abetted a principal in the murder. And from the evidence adduced at trial, it was plausible for the jury to conclude, beyond a reasonable doubt, that the defendant may have acted as an aider and abettor of his codefendants in the murder. It was uncontroverted that a murder occurred. Defendant's primary defense was to suggest that someone else —specifically, DaCoster or Green—could have inflicted the fatal stab wound to the victim's chest, or that it was inflicted in self-defense. The evidence does not have to establish beyond a reasonable doubt that either of the two codefendants were the principals in the murder. *See United States v. Campa*, 679 F.2d 1006, 1013 (1st Cir.1982). As the First Circuit explained in *United States v. Campa*, "[t]he identity of the principal need not be established, nor need the principal be convicted. The prosecution need only prove that the substantive offense had been committed by someone and that the defendant aided and abetted him." *Id.* at 1013 [citing *United States v. Harper*, 579 F.2d 1235, 1239 (10th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978)]; *Hendrix v. United States*, 327 F.2d 971, 975 (5th Cir.1964). *Accord United States v. Staten*, 581 F.2d 878, 887 (D.C.Cir.1978). Here, the evidence clearly established that the victim died from a stab wound to his heart and suffered eight additional stab wounds. The evidence further established that defendant, DaCoster and Green were the only other persons in the shower area with the victim when the stabbing occurred. No substantial evidence was offered by defendant to refute the logical conclusion that one of these three inmates, or perhaps all three, committed the murder. The aiding and abetting instruction was, therefore, a proper response to the jury's question and amply supported by the evidence presented at trial.

■ The submission of the supplemental instruction did not unfairly surprise defendant or unduly prejudice defense counsel's closing arguments to the jury, in violation of Rule 30, Fed.R.Crim.P. Defendant was clearly on notice of the aiding and abetting charge; it was specifically included in the indictment. The government offered an aiding and abetting instruction in its proposed instructions, but elected to withdraw it after defendant objected. Importantly, when the instruction was proposed as a response to the jury's question, both parties were given time to state their objections before the Court gave the instruction. *See United States v. Polowichak,* 783 F.2d 410, 413 (4th Cir.1986). Defendant objected to the submission of the instruction but had no objections to its form as a statement of the law. Ultimately, after the Court read the supplemental instruction to the jury and cautioned that it should not be given undue weight, both parties were afforded an opportunity to present additional closing argument before the jury in response. Both parties accepted that opportunity and argued for their positions. Any possible prejudice to defendant was, therefore, cured by the opportunity for further oral argument. Moreover, the Court strictly complied with Rule 30, Fed.R.Crim.P., by informing counsel of its intention to give the supplemental instruction prior to their supplemental arguments to the jury. This opportunity for further argument distinguishes the case at bar from other cases in which a defendant was prejudiced by a supplemental instruction. *See, e.g., United States v. Gaskins,* 849 F.2d 454, 460 (9th Cir.1988) (conviction reversed where supplemental aiding and abetting instruction

offered "without allowing additional argument to address this theory").[2] The additional time provided here cured any possible prejudice resulting from the submission of the supplemental instruction. *Cf. Downie v. Powers,* 193 F.2d 760, 767 (10th Cir.1951) ("If after argument of counsel, the court changes its mind or ultimately gives an instruction, or the substance of an instruction, it has indicated it will not, ... counsel should be given an opportunity, if justice requires, to reargue the facts in the light of the changed law of the case.").

For these reasons, it is hereby ORDERED:

That defendant's motion for a new trial is DENIED.

---

2. Defendant's remaining cases are also distinguishable. They generally involved the trial court's failure to inform counsel of the nature of the court's instructions before closing argument. *See, e.g., United States v. Kostoff,* 585 F.2d 378, 380 (9th Cir.1978) ("in giving instructions that were materially different from those proposed, counsel was misled by the court to the defendants' prejudice"); *United States v. Mendoza,* 473 F.2d 697, 700–01 (5th Cir.1973) (new trial granted because no "reasonable certainty that the outcome would be the same if the defense had argued before the jury with accurate information about the Trial Judge's proposed action upon the requested jury instruc-

tions"); *United States v. Harvill,* 501 F.2d 295 (9th Cir.1974) (conviction reversed where trial court gave instructions contrary to instructions accepted before closing argument and, in effect, "partially repudiating" defense counsel's closing argument); *cf. Delano v. Kitch,* 542 F.2d 550, 556 (10th Cir.1976) (reversible error where instructions given were substantially different from those the court informed counsel it intended to give). In sharp contrast, this Court gave the parties ample notice of the proposed supplemental instruction, an opportunity for objections, and time for further argument before the jury after being so informed.