**Willie HORTON, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civil No. 93–439–AM.
Criminal No. 89–180–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 25, 1997.

George F. West, Jr., Richard McGettigan Reilly & West, PC, Alexandria, VA, for Petitioner.

Helen F. Fahey, U.S. Atty., David G. Barger, Asst. U.S. Atty., Gary Jackson, Special Asst. U.S. Atty., Alexandria, VA, for Respondent.

## MEMORANDUM OPINION

ELLIS, District Judge.

This 28 U.S.C. § 2255 petition, which is before the Court on the parties' cross-motions for summary judgment, presents two questions: (1) whether the federal prosecutor's *Brady* obligation extends to documents contained in the files of the District of Columbia Department of Corrections; and (2) whether there are any disputed material facts regarding whether a government witness gave perjured testimony and, if so, whether the prosecutor knew or should have known of the perjury.

### I

The facts and procedural history necessary for the resolution of the motions at bar may be succinctly stated.[1] On October 31, 1988, Harold Hoston, an inmate at the District of Columbia's Lorton Correctional Complex ("Lorton"), was stabbed to death in the shower area of Cellblock 2. Petitioner and two other Lorton inmates, James DaCoster and Darron Green, were accused of the murder. DaCoster and Green pled guilty to manslaughter charges prior to trial. Petitioner elected to proceed to trial and was convicted of first-degree murder by a jury on July 20, 1989.[2]

The prosecution's key trial witness, inmate Steven Lofton, testified that he could see the shower area from his cell in Cellblock 2 and that on October 31, 1988, while he was watching the shower area, he saw petitioner stab Hoston. Lofton further testified at trial that on the day after the murder, November 1, 1988, petitioner told him not to tell the police what he had seen. Lofton had testified at the grand jury that on November 1 petitioner, DaCoster, and Green all asked him to remain silent, and that on the previous day, October 31, petitioner had also asked him to refrain from speaking to the police.

To rebut and discredit Lofton's testimony, petitioner sought to prove that the November 1 conversation Lofton described could not have occurred because petitioner was moved from Cellblock 2 on October 31 after the murder. To this end, petitioner

---

1. A more thorough statement of the facts and procedural history is found in *United States v. Horton*, 716 F.Supp. 927 (E.D.Va.1989), and *Horton v. United States*, No. 93–439–AM (E.D.Va. Jan. 31, 1995) (unpublished memorandum opinion) [hereinafter *Horton* Mem. Op.].

2. Petitioner's conviction was affirmed. *See United States v. Horton*, 921 F.2d 540 (4th Cir.1990). DaCoster and Green did not testify at petitioner's trial. Pursuant to their plea agreements, they were prepared to testify in rebuttal, but ultimately were not called by the government.

called Lorton correctional officer Captain James Holt, who testified that after the murder occurred, petitioner, DaCoster, and Green were transferred from Cellblock 2 to Cellblock 3. In support of this testimony, petitioner adduced a Lorton document dated October 31, 1988, admitted into evidence, showing that petitioner's housing status was changed on October 31 to reflect a move from Cellblock 2 to Cellblock 3. Yet, this testimony and supporting document were not conclusive evidence of the date of petitioner's move because Captain Holt conceded under cross-examination that the October 31 document reflecting that petitioner's housing status was changed on that date did not necessarily mean that petitioner was actually moved on that date. In further cross-examination, Holt was asked why, if petitioner had been relocated, his institutional file contained no record of the move. Holt conceded that if there had been a move, there should be a corresponding record to that effect in petitioner's Lorton file. No such document was adduced. Yet, even in the absence of such a document, Holt remained steadfast in his recollection that petitioner and the other two suspects were actually moved to Cellblock 3 on October 31.

It now appears that such a document existed in Lorton's files. Specifically, Lorton's records included a document entitled "Housing Status Review," dated November 7, 1989, confirming that petitioner was moved from Cellblock 2 to Cellblock 3 on October 31, the night of the murder.[3]

Petitioner filed his first request for habeas relief pursuant to 28 U.S.C. § 2255 on April 30, 1991, claiming ineffective assistance of counsel. That petition was denied on February 19, 1992.[4] Petitioner filed his second § 2255 petition, the instant one, on February 22, 1993, alleging (i) *Brady* violations with respect to certain witness statements of one Langford Wiggins, (ii) conflict of interest on the part of his trial counsel, and (iii) prosecutorial failure to disclose the November 7 document. By memorandum opinion dated January 31, 1995, petitioner's first two habeas claims were rejected. See *Horton* Mem. Op. at 4–6. With respect to the third claim, petitioner contends that had the November 7 document been available at trial, it would have substantiated the testimony of Captain Holt and directly cast doubt on Lofton's veracity, an important issue given the centrality of Lofton's testimony. Moreover, introduction into evidence of the November 7 document would have prevented the government from challenging Holt's memory on the basis of the lack of any record of the move in petitioner's file. Petitioner further contends that the government had this document in its possession at the time of trial. Thus, the claim for relief based on this document is two-pronged. First, petitioner argues that the government's failure to disclose the November 7 document violated *Brady v. Maryland.*[5] Second, he contends that the prosecution obtained his conviction using testimony (Lofton's) that it knew or should have known was perjured.

This last claim, based on the November 7 document, was referred to the magistrate judge for an evidentiary hearing on the perjury issue.[6] The parties filed cross-motions for summary judgment, and the magistrate

---

3. It is not clear from the record how petitioner obtained a copy of this document. He states in his petition for habeas corpus relief that he received it "from prison officials in 1992." See Brief in Support of § 2255 Motion at 11. Petitioner concedes that government trial counsel did not have a copy of the document at the time of trial.

4. *See Horton v. United States,* No. 91–859–AM (E.D.Va. Feb. 19, 1992) (unpublished), *aff'd,* No. 92–6261, 1992 WL 223705 (4th Cir. Sept. 14, 1992) (unpublished).

5. The 1995 memorandum opinion disposed of the *Brady* issue with regard to the November 7 document, but it did so on the assumption that

there was only one housing document. See *Horton* Mem. Op. at 8. Because it is now clear that there were two separate housing documents, one dated October 31 and one dated November 7, the *Brady* issue is revisited here.

6. *See Horton* Mem. Op. at 12. The evidentiary hearing was not held as ordered in the memorandum opinion, apparently due to the loss of the case file in the Clerk's Office. On May 12, 1997, a second order was entered appointing counsel for petitioner and ordering an expeditious hearing.

judge heard argument on those motions.[7] After oral argument, the magistrate judge issued a Report and Recommendation recommending that the summary judgment motions be denied and that an evidentiary hearing be conducted on two issues: (i) whether the prosecution had an obligation under *Brady* to turn over the November 7 document; and (ii) whether Lofton perjured himself, and if so, whether the prosecution should have known of that perjury.[8] It is this Report and Recommendation that. is now before the Court for consideration.

## II

In every criminal case the prosecution must disclose to the defendant all "evidence ... material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963); *United States v. Ellis*, 121 F.3d 908, 914 (4th Cir.1997); *see also Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) (extending *Brady* to include impeachment evidence). This obligation is rooted not in the federal discovery rules, but in the Due Process Clause of the Fifth Amendment. *See United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). It is the defendant's constitutional right to a fair trial that entitles him to disclosure of exculpatory and impeachment evidence. *See Smith v. Secretary of N.M. Dep't of Corrections*, 50 F.3d 801,

823 (10th Cir.1995). Moreover, the government's duty to disclose this evidence encompasses not only material that is in the possession of the prosecutor, but also material that is "known to others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995). But there is no "duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996). The prosecutor's constructive knowledge of material evidence extends only to "federal agenc[ies] participating in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir.1989) (holding further that disclosure obligation under Rule 16, Fed.R.Crim.P., and under *Brady* turns on "the extent to which the prosecutor has knowledge of and access to the documents sought").[9]

Thus, while documents in the custody of the federal Bureau of Prisons, for example, may be deemed to be in the possession of the United States Attorney for *Brady* purposes, that is not the case with records located in a nonfederal detention facility. *See United States v. Santiago*, 46 F.3d 885, 894

---

**7.** The evidentiary hearing has been removed from the docket pending resolution of the summary judgment motions.

**8.** The government first argues that petitioner's request for habeas relief is procedurally barred under the "cause and prejudice" test set forth in *United States v. Metzger*, 3 F.3d 756, 757 (4th Cir.1993). Petitioner has already prevailed on this issue, *see Horton* Mem. Op. at 4, and thus there is no need to entertain the government's argument again here.

**9.** *See also United States v. Capers*, 61 F.3d 1100, 1103 (4th Cir.1995) (stating that to prevail on *Giglio* claim, defendant must show that government actually possessed or knew of the relevant evidence), *cert. denied*, — U.S. —, 116 S.Ct. 1830, 134 L.Ed.2d 935 (1996); *United States v. Sutton*, 542 F.2d 1239, 1241 n. 2 (4th Cir.1976) (imputing F.B.I. agent's knowledge to federal prosecutor for *Giglio* purposes (quoting *Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir.1964) ("The

police are also part of the prosecution, and the taint on the trial is no less if they, rather than the [prosecutor], were guilty of the nondisclosure."))); *Smith*, 50 F.3d at 824 (*Brady* duty extends to "law enforcement personnel and other arms of the state involved in investigative aspects" of the case (footnote omitted)); *Stano v. Dugger*, 901 F.2d 898, 903 (11th Cir.1990) (if detective was part of prosecution team, his knowledge would be imputed to prosecutor's office); *cf. United States v. Antone*, 603 F.2d 566, 569 (5th Cir.1979) (declining "to draw a distinction between different agencies under the same government," and extending scope of duty when "state and federal [agencies have] pooled their investigative energies to a considerable extent"). *Love v. Johnson*, 57 F.3d 1305, 1314 (4th Cir. 1995), is not contrary to this settled line of authority. Any suggestion in *Love* that *Brady* reaches beyond materials constructively possessed by the prosecutor is dictum. What is clear is that *Love* 's holding is consistent with the result reached here.

(9th Cir.1995) (differentiating records in federal custody from those held in state system); *United States v. Burnside,* 824 F.Supp. 1215, 1254 (N.D.Ill.1993) (prisoners' files from federal detention center treated as being in custody of U.S. Attorney). This is so because state agencies are not normally part of the prosecution's investigatory team.[10] As such, the prosecution cannot be deemed to possess, constructively or otherwise, any documents held by those outside agencies such that a disclosure duty would be triggered. *See United States v. Walker,* 720 F.2d 1527, 1535 (11th Cir.1983) (refusing to impute knowledge of state officials to federal prosecutor); *cf. Reddy v. Jones,* 572 F.2d 979, 982–83 (4th Cir.1977) (refusing to impute knowledge of federal investigators to state prosecutors).[11] It follows inexorably that in this case the United States Attorney's Office had no obligation under *Brady* to turn over a document that was part of petitioner's file at Lorton, a nonfederal facility, but that was not in the possession of the prosecution or any of its investigative agents, as petitioner concedes.

■ There is a separate and independent reason for concluding that *Brady* does not operate in these circumstances, even assuming that the November 7 document was in the constructive possession of the prosecution. The prosecution has no duty to disclose evidence to the defendant "when defense counsel could have discovered the evidence through reasonable diligence." *United States v. Kelly,* 35 F.3d 929, 937 (4th Cir. 1994).[12] This principle has been invoked in

several cases to support the holding that the prosecution has no duty to disclose prison records. *See Mills v. Singletary,* 63 F.3d 999, 1019 (11th Cir.1995) (prison psychiatric records equally available to defense, and thus not *Brady* material), *cert. denied,* —— U.S. ——, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996); *United States v. Ellender,* 947 F.2d 748, 757 (5th Cir.1991) (prison record not *Brady* material because defendant could have subpoenaed it; defendant's "lack of reasonable diligence" was cause of nondisclosure).

Here, petitioner did not serve a subpoena on officials at Lorton. Had he done so, he might have unearthed the document he now claims might have altered the result of his trial. However, the fact that the November 7 document was an important piece of evidence does not change the fact that it was equally available to defense counsel during the discovery stages of this case. Nor does it alter the rule that the prosecution has a duty to disclose only that information over which it has control. In the circumstances, then, the prosecution had no duty under *Brady* to disclose the November 7 document, and thus petitioner's request for relief must be denied in this regard.

The magistrate judge recommended that an evidentiary hearing be conducted to resolve this issue. Specifically, he implied that certain facts might come to light in the course of such a hearing that would indicate that the November 7 document was in fact in the possession of an agent of the prosecution prior to trial. First, there is no suggestion in

---

10. There is no suggestion in the record that Lorton officials participated in the federal investigation of Hoston's murder.

11. *See id.* at 983 (observing that prosecutors "cannot be called upon to foretell the knowledge of others resting in some foreign sphere"). One case has extended a federal prosecutor's *Brady* duty to include files located at a nonfederal agency, but the circumstances of that case are inapposite. In *United States v. Brooks,* 966 F.2d 1500 (D.C.Cir.1992), the undisclosed evidence was in the possession of the District of Columbia police. The court of appeals considered the information to be in the possession of the United States Attorney for the District of Columbia because that office prosecutes both state and federal crimes, and is thus "closely aligned" with the D.C. police. *See id.* at 1503 (expressing concern

over "an inaccurate conviction based on government failure to turn over an easily turned rock"). There is no evidence in the record of this case, however, to support petitioner's claim that Lorton and the United States Attorney for the Eastern District of Virginia are "closely aligned."

12. *See also Hoke v. Netherland,* 92 F.3d 1350, 1355 (4th Cir.1996) ("The strictures of *Brady* are not violated, however, if the information ... was reasonably available to the defendant."), *cert. denied,* —— U.S. ——, 117 S.Ct. 630, 136 L.Ed.2d 548 (1996); *United States v. Wilson,* 901 F.2d 378, 380 (4th Cir.1990) (no duty to disclose "if the evidence in question is available to the defendant from other sources"); *id.* at 381 (no duty if evidence "lies in a source where a reasonable defendant would have looked").

the record that this may have been the case. Indeed, petitioner concedes that government trial counsel never knew of the document's existence.[13] Second, and more important, even if the November 7 document could be said to have been in the government's constructive possession, there would arise no consequent *Brady* duty because the information was readily available to the defendant by way of subpoena, and thus the prosecution would have had no obligation to disclose it. Accordingly, an evidentiary hearing on the *Brady* issue is unnecessary.

### III

■ Petitioner next argues that the prosecution knew or should have known that Lofton was perjuring himself when he testified to a conversation between himself and petitioner on November 1. It is beyond cavil that a conviction obtained partly on the basis of evidence the prosecution knew to be false violates the defendant's due process rights. *See Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Campbell v. Reed*, 594 F.2d 4, 8 (4th Cir.1979) (finding due process violation when "the prosecution allowed a false impression to be created at trial when the truth would have directly impugned the veracity of its key witness" (internal quotation marks omitted)). To establish such a violation, petitioner must show (i) that the testimony was perjured, (ii) that the prosecution knew or should have known of the perjury, and (iii) that the testimony was material to the conviction. *See Chavis v.*

*North Carolina*, 637 F.2d 213, 222 (4th Cir. 1980) (citing *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)). Petitioner must prove each of these elements by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958) (placing burden on petitioner with respect to factual allegations in a § 2255 petition).

The 1995 memorandum opinion in this matter concluded that, while any perjured testimony by Lofton would have been material, an evidentiary hearing was needed to determine whether Lofton did indeed perjure himself, and if so whether the prosecution should have known of that fact.[14] The magistrate judge similarly recommended that the Court hear additional evidence on this perjury claim. A thorough review of the record, however, demonstrates that no hearing on this issue is required, as the facts necessary for its resolution are already fully contained in the record.

As evidence of Lofton's perjury, petitioner first points to the November 7 document and asserts that it proves that he, petitioner, could not have been in Cellblock 2 the day after the murder, and thus that the November 1 conversation about which Lofton testified never could have taken place.[15] From this, argues petitioner, it follows that Lofton must have been lying when he gave his trial testimony. There is, however, a more likely inference to be drawn from these facts: Lofton simply recalled the wrong date of the conversation when he testified at trial.[16] In

---

**13.** Of course, destruction or loss of the document by a member of the prosecution team may raise issues of bad faith or obstruction of justice, but those issues are not presented in the instant petition, nor is there any evidence that would support such allegations. Accordingly, any suggestion of destruction or loss of the document would be mere speculation and not a proper basis for an evidentiary hearing.

**14.** *See Horton* Mem. Op. at 10–11. The memorandum opinion concluded that there was no actual knowledge of perjury on the prosecution's part. *See id.* at 10.

**15.** Throughout most of the litigation of this petition, both petitioner and the government have assumed that if petitioner had been moved to Cellblock 3 on October 31, there would have been no way for him to communicate with Lofton on November 1. *See, e.g.,* Govt.'s Response to

§ 2255 Petition at 3. The government finally challenged this assumption in its summary judgment motion, noting that petitioner has not adduced any evidence supporting the notion that a housing relocation necessarily would have prevented contact between the two inmates. *See* Govt.'s Motion for Summary Judgment at 31. Nonetheless, for purposes of this decision, it is assumed that an October 31 move would have prevented petitioner and Lofton from speaking on November 1.

**16.** In the grand jury proceeding, Lofton testified that there were two conversations, one on October 31 and one on November 1. At trial, he testified only to the latter date, and was not asked on direct or cross examination about any conversation on October 31.

any event, the evidence is at best in equipoise on this point. Petitioner simply has not proven by a preponderance of the evidence that Lofton perjured himself.[17]

 Moreover, even assuming Lofton had perjured himself, petitioner has not proven by a preponderance of the evidence that the prosecutor should have known of that perjury.[18] In this regard, petitioner highlights Lofton's grand jury testimony, in which he stated that on November 1 he spoke about the murder not only with petitioner, but also with DaCoster and Green. Petitioner further notes, however, that government trial counsel knew that DaCoster had been moved from Cellblock 2 the prior evening.[19] Therefore, petitioner argues, she knew, or should have known, that Lofton was lying at the grand jury about a November 1 conversation, and thus that he was lying at trial about that conversation. Petitioner also points to Captain Holt's testimony regarding the relocation of petitioner on the night of October 31, and to the indication in the October 31 document that petitioner's housing status had changed. All of these facts, argues petitioner, should have indicated to government trial counsel that Lofton was perjuring himself.

Inconsistent testimony from a government witness, however, does not establish the knowing use of false testimony. *See United States v. Griley*, 814 F.2d 967, 971 (4th Cir.1987). At most, all of this shows only that Lofton was testifying to an incorrect date, and that government trial counsel knew as much. It does not, however, demonstrate that government trial counsel knew

Lofton was perjuring himself. Perjury consists of false testimony concerning a material matter, "given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory)." *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995) (citing *United States v. Dunnigan*, 507 U.S. 87, 93–94, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993); 18 U.S.C. § 1621(1)). The latter explanation is at least as likely, if not more likely, than the former.[20] Thus, all that may be said here is that government trial counsel knew that Lofton was mixed up as to his dates, given that she knew there was a strong likelihood that the putative conversation did not take place on November 1. This is quite different from a situation in which a prosecutor knows, or should know, that a witness has intentionally offered false testimony.

In short, petitioner cannot satisfy either of the first two prongs of the *Chavis* test. Nor is there any reason to conclude that an evidentiary hearing would produce any credible evidence to the contrary. Thus his request for habeas relief must be denied to the extent he claims the government should have known Lofton was perjuring himself.

An appropriate order will issue.

---

**17.** This conclusion is not inconsistent with the Court's observation in the 1995 memorandum opinion that the October 31 document might "tend[ ] to show" Lofton was lying. *See Horton* Mem. Op. at 10. That observation reflected only one of several possible inferences that reasonably could have been drawn from the facts as then known.

**18.** Again, although the 1995 memorandum opinion suggested that "[v]iewing the evidence favorably to petitioner," the prosecutor might have known of the perjury given that she "had possession of the [October 31 document] at some point prior to trial," *Horton* Mem. Op. at 11, considering the record as a whole, there is insufficient evidence to support such a conclusion.

**19.** Petitioner was provided with a Housing Status Review document for DaCoster that indicated that DaCoster had actually been moved on October 31, not just that his housing status had changed, as was the case with petitioner's file. Specifically, government trial counsel represented at trial that, "I don't know for a fact when [Horton and Green] were moved. I know when James DaCoster was moved. That is the only person I know who was moved out of the cell block that [October 31] night."

**20.** Lofton's trial testimony reflects a characteristic imprecision concerning dates. Indeed, he acknowledged his inability to recall precise dates. In response to one of defense counsel's questions, he admitted, "I can't recall the dates and the months."